On behalf of the Respondent at the lot, Ms. Margaret McKean, on behalf of the petitioner at the ladies, Justin M. Schmidt. Good morning, Counsel. Ms. McKean. May I please report? My name is Margaret Kean, and I represent Appellant Robert Izzo. This is an appeal from the trial court's denial of his petition to modify child support. As justices know, Section 510 of the Illinois Marriage and Dissolution of Marriage Act governs modifications of child support, and it requires a substantial change of circumstances. In re Marriage of Johnson describes what substantial change in circumstances is. It says, only some change in circumstances of any nature which would justify equitable action by the court in the best interest of the children with appropriate consideration of the rights and interests of the parents as required. So, at its heart, it's an equitable inquiry. The support award, the court needs to determine whether the support award is fair, and if it's not fair, if it needs to be modified, if the status quo needs to be changed. So, circling back to the law, we know the statute, 510, as I said, it requires a substantial change of circumstances. But note that it's plural. Circumstances. It's plural for a reason. The legislature wanted to look at all of the circumstances, not just one. Everything is relevant in terms of what should be looked at if the child support should be changed. This requirement is supported by the financial affidavits. The fact that most trial courts require financial affidavits. This information gives income information. It gives asset information. The needs of the children. All of these things are considered relevant in this inquiry. And then you look to the common law, which puts flesh on the bones of the statute. For decades, there's been a holistic view for the analysis of a substantial change. You look first to Inversant, and it lists a number of factors to be considered, including the needs of the child, the financial status of the non-custodial parent, the financial status and needs of the custodial parent, and the physical, emotional, and educational needs of the child. You raised three points as far as substantial change, correct, basically? Yes, yes. Wife's income. Wife's income. The unemployment of your client. I'm sorry? Your client's unemployment. Yes. And the change in parenting time. Yes. The trial court had reasons for each one of these three things why it was not a substantial change. If, in fact, those reasons were correct, why would it matter if we take them all together or we take them separately? Well, they have relevance to each other. If you put them up and hit them down like targets, it's not actually looking at the true circumstances. And it's all of these circumstances were not the reason for the change. Collectively, they were the reason for the change, but they weren't the one reason. So, for example, you have the income of the recipient. That's relevant because it lets you know if they're financially similarly situated. The needs of the child are going to be met no matter what. If they are making the same, they have the same number of assets, they're both very wealthy, the importance of the child support or work is lower. Two, if you talk about parenting time, then I can get into the reason why it's incorrect what he said in terms of parenting time, about the timing. There is no such requirement. We know that parenting time alone has been the basis for many modifications throughout the decades of Illinois jurisprudence. And third, the fact that he had retired was not the reason he filed, but it was the straw that broke the camel's back. So we could rely on parenting time alone and not look at the collective? Well, I think, I mean, you're right. I just want to make sure I understand what you're arguing. Do we have to look at the collective or can we look at them alone? I believe that the collective has to be viewed, but there are circumstances in which a court has relied only on one factor. I mean, if you look through TURC, when you're looking at TURC's analysis of why, you know, a change of custody, whether or not there should be child support given to the non-custodial parent, that they go through that some were cited just because of change of custody, and some they looked at the income, the financial situations of both parents. Well, when you say look at them all together, what do you mean? I mean, you have to look at each individually. I mean, how does the parenting time relate to the income of the recipient and the income of your client? Well, parenting time, let's, if one parent had more parenting time, significantly more parenting time, and their incomes and their assets were not equal, then it wouldn't make sense, right? You want to do parity on all levels. You want to make sure that the child, as I point out in TURC, that the child is not going from one household where you're living high and then to another household where you're living low. That's not in the best interest of the children. So parenting time is important in the sense that there are expenses that go along with parenting time. You have just the everyday expenses, food, et cetera, things like that. Then you have housing, and that's equal for both of them. They both have the same type of expenses for the child. So that's why I think you have to look at them in conjunction. Well, how does your client's retirement fit into that picture? Well, prior to his income, of course, is lower, but no one is saying that he couldn't pay it. That's not necessarily the issue. They're both extremely wealthy. It becomes an issue of whether or not it's equitable. Is it equitable for a man who is of retirement age, who retired, to have to continue to pay child support when he is paying all sorts of other expenses for the child? It becomes what the courts want to avoid, a windfall to one parent. Do we really look at what's equitable if there's been no substantial change in circumstances? I mean, you have step one, which is you have to meet your burden of substantial change. Then step two is what's equitable. We don't look at equitable on step one, do we? I believe you do. I believe that equity is part of a substantial change. What if there's a marital settlement agreement that clearly favors one party, but everybody contemplates in it that something's going to happen that is, we might view a year or two later, as inequitable? You're stuck with the marital settlement agreement, are you not? That's not a substantial change in circumstances if it was contemplated, if this inequality was contemplated by the marital settlement agreement. Well, I don't believe this inequality was contemplated by the marital settlement agreement. I understand that, but you're arguing what's equitable, and I'm just trying to figure out in the context of the procedure of this, what do we do? Well, number one, I believe that it isn't a two-step process. First you find a change, then you determine whether it's equitable. I believe that equity is part of every analysis, no matter what you're looking at in terms of child support. And in Raymerger-Johnson, that's why they said some change in circumstances of any nature which would justify equitable action. So you're looking, always in the back of the court's mind should be this notion of, well, have situations been changed since the date of the order, entry of the order, to now, that make it seem, that makes it inequitable for the status quo to continue? And if so, then you move to the next step. What do we do about that? What becomes, should it be terminated, should it be reduced, what does that mean? Well, I mean, if there's a change in the circumstances that make it inequitable, that would be a substantial change in circumstances. Yes. Okay. But if there's been no change in circumstances, i.e., the Merrill Settlement Agreement contemplates something, and that hasn't changed, then whether it's inequitable or not is of no consequence. So if we're talking about, if I'm understanding you correctly, you may be talking about the income itself and the wealth of each parent within the Merrill Settlement Agreement. In this case, in the context of this case, the trial court found that the wife's income and her increase in income was contemplated in the Merrill Settlement Agreement. Let's just take that fact and let's just assume for a moment. I know you disagree. Let's assume for a moment that that's true. Then there's been no, even though it may be inequitable that he's paying this money, there's been no substantial change in circumstances. Do you agree with that? Again, taking all those things that I said as true. Well, I agree that something that's contemplated in the Merrill Settlement Agreement can't serve as a sole basis for a substantial change. But the income is not the sole basis. There are other things that the MSA did not contemplate. The MSA gave Robert Izzo two nights out of every 14 nights. The MSA gave, which that was changed in 2013 to a nearly 50% schedule. That's a big difference that can't be ignored. So even if the wealth was contemplated, this is a, no one questions the wealth of both parties. But the parenting time was not contemplated. And it was contemplated under the Merrill Settlement Agreement that at some point he would retire. Well, he retired early, did he not? He was close to retirement age. He was nearing 60. So it wasn't as if it were a very early retirement. It was within the realm of reasonableness. Okay. So turning to, so we were talking about the law and how there's this holistic analysis and how there are different factors that the courts have looked to, which includes needs, the financial status of both parents, and the needs of the parents themselves. So needs of the children and needs of the parents. The recent case for Hines is very illustrative of this. It continued this notion, and it recognized that one factor alone, good faith retirement, wasn't enough to show a substantial change in circumstances. Instead, it listed seven factors which one should look at in determining whether one exists. So the importance of the obligation. Again, that goes, in our case, to the income of each party. The child's needs. Again, we know that the child's needs are met regardless of any child support award. The parent's income. The good faith of the parent's retirement. The parent's lifestyle. The strength of the parent's overall financial position. And whether the existing obligation will jeopardize the parent's financial security in retirement. So this does not create new law. It's created this non-exhaustive list. No factor is more important than the other. And basically, it did an organic, equitable inquiry, which led to the reversal of the trial court's finding that there was a substantial change. Here, the trial court did not do such an organic inquiry. So as you pointed out, the three factors that Robert Izzo brought forth. The unequal financial picture. That they are both very rich, but time had been generous to Chris Izzo, and she had gotten even richer since the time he had come back. Parenting time had increased dramatically. It was now almost 50%. And he had retired. And again, this was not the reason he was bringing it, but it was a straw that broke the camel's back. Because he had been voluntarily doing many things, such as paying college for his two older children. Paying extracurricular activities for most of the extracurricular activities without any reimbursement, even though he was entitled. He had been paying child support at the same level without seeking any type of reduction since the parenting time changed in 2013. So that enriched Chris Izzo, theoretically, by approximately $330,000. So, and as I mentioned, the court siloed each of these things. It didn't think about how they related to one another. So when it said it contemplated that Chris, the MSA contemplated that Chris Izzo would be wealthy, and that our assets would generate income, that sort of misses the point. That misses the point you're saying? Yeah, in the sense that the real relevance was child support is not necessary. There's no issue of the children's needs being met. All of the children's needs are more than covered. And she's just in a better financial situation than she was at the time of judgment. That was the real relevance of it. But again, that was anticipated at the time of the divorce. Yes. Although it probably wasn't contemplated that she would be in the same financial situation as he was. You may continue. As he was. He had been working throughout. And so the fact that they have almost equal assets is of note. Realistically, under this Berthein's case, shouldn't the holistic view be more on the second part of the analysis, which is what's the ability? You talk about in that case the husband didn't have a decreased ability to pay. But realistically, if someone retires, that theoretically is a substantial change in circumstances. And then we move on to the second one and then say, why did the person retire? Did they have an increased ability to pay and so on and so forth? So, I mean, if we look at the holistic, shouldn't that be more geared toward the second part, how much the support should be or whether it should be changed at all? No. I believe that in order to determine whether there's been a substantial change, you have to look at things equitably. Even in Berthein's, there was an equitable view. The fact that he could continue paying. So all of these different retirement, the line of retirement case is part of that point. Sometimes I'd say, if there's good faith retirement, you're fine to go step two. Here they say, you say, no, that's not necessarily the case. Let's look at what you're spending your money on. Let's look at your lifestyle. Let's look at what the child's needs are. Let's look at all of these different things and determine whether or not it's equitable to say that your child's support should be modified. So I believe it's equity is part of all parts of the analysis. All right, you'll have time on rebuttal. Thank you. Thank you very much. Mr. Smit. My name is Justin Smit. I represent Chris Izzo on this appeal. As the epilee in this case, she's defending. Can you keep your voice up, please? It's a big room, and everybody in the courtroom wants to hear, please. She's defending the appeal taken by Robert, her ex-husband, from the Judge Douglas' decision, which denied Robert's amended motion to modify the child support. Judge Douglas' decision was the correct decision. Judge Douglas' decision was well-reasoned and based on the facts that were actually heard at the time of trial. Judge Douglas' decision was based on the case law provided to him in Chris Izzo's written closing argument, as well as those cases that were provided to this court in her brief. Counsel, is there any authority supporting a proximity requirement for seeking modification in child support? Well, I believe that this court's recent analysis in Salvatore does provide. In which case? Salvatore, and that's cited in my brief. I'm going to give that. Thank you. Is that 2019 Illinois Appellate 180425? Why do you feel that Salvatore supports that? This court in that analysis, in that particular case, the issue before was whether or not the wife's future employment, that employment obtained by her after the judgment was entered, constituted a substantial change in circumstances that would allow the husband to modify child support under the new income shares statute. What the court determined and what this court rightly found was that he was trying to get in under the new statute, which would substantially decrease his child support obligation. This court said trial courts have to be cognizant of this fact. They must not fall for this trap, and they must be very cognizant of people trying to get in under this new statute. And so you think that's what is being done here? Absolutely. The statute? Absolutely. Mr. Izzo has attempted to modify child support almost since the judgment was entered back in 2018. Well, he tried to change custody. Isn't that correct? In parenting time? He did. Right, parenting time and custody. But he didn't, in conjunction with that, he asked for a change in support. Isn't that correct? With that petition, yes, but within that. But there was another time that the record shows? Yes, absolutely. And he was impeached at trial. He testified that he had never attempted to modify child support prior to his 2017 filing. He was shown the petition that his attorney filed within months of the judgment in 2018 being entered, where he attempted to modify child support. In his motion to modify custody that the court indicated, he also asked for a modification, a termination of his support and asked for support from Prince. There's been a continuous scheme by him to get out from under this support obligation. So then how does that go to support your argument that he tried to take advantage, he was just trying to take advantage of the statute as opposed to a basis for finding a substantial change in circumstances? His actual, according to his testimony, which wasn't supported by any evidence at the time of the trial, any documentation, this change in his appointment in Virginia began sometime in 2015, two years before the statute was enacted. His actual last day of work at Freddie Mac was in the fall of 2016. He never told Chris Izzo that they had quit that job. He waited a whole entire year. The new statute became effective July of 2017. He filed August of 2017, one month after that. The trial court didn't rely on proximity or lack thereof in time on that issue, though, on the loss of employment. No, it didn't, because there were so many other factors that pointed to the fact that this decision to leave was voluntary, that it was an intentional act on his part, a voluntary act to reduce his income, that it didn't need to make that analysis on that particular issue. I'm just struggling to see how a change in employment is someone's attempt to use the new statute as a substantial change in circumstances. Well, he could have filed in 2016. He had lost that job. He was making over a billion dollars a year. The severance that he was being paid only paid him out according to his testimony. Right. But the only person – when you don't file something like that, the only person you're hurting is yourself. Let's say you do have a substantial change in circumstances, and you – which would warrant a reduction. Let's say he lost his job completely and he was penniless, but he decided not to file a petition because he had money saved or his mother was giving him money to pay the child support. Whatever the reason may be, he still pays his child support for 10 more years and then files a petition. At that – whenever he decides, the only person he's hurting is himself because he can only get retroactive to the date of the filing of the petition. Right? That's correct. So all that money he paid that he maybe never should have paid is – he's out. But that applies in the face of his own testimony. At the time of the trial, he testified that he left that job because he had enough money to support himself, his family, and his son. The payment of the support, according to him, wasn't an issue, wasn't a concern, and he admitted that he had the ability to pay. This was his last-ditch attempt to get – to modify that support, which he's done two times previously, and he intentionally waited to file it when the statute became effective. Why wouldn't a change in parenting time alone warrant a substantial change in circumstances? It's too remote. And in this case, this court in the South, the probation talks about that. You can't allow people – definitely didn't change in circumstances. That occurred five years ago, six years ago, seven years ago. Well, that's in the context of using the new statute to establish a substantial change, which the new statute says you cannot do. Right. So that's the context of Salvatore. I mean, so, I mean, I understand your argument, but aren't – isn't there case law way before the new statute that a change – a substantial change in parenting time is a substantial change in circumstances? It could be considered. There are cases that deal with that. But in this particular instance, he didn't ask for a modification of child support in 2014, although it was complicated by how he was returning that representativeness at that time as well, and it was discussed at that time, and he was attempting to do that. Well, that's part of the negotiation, because you enter into an agreed settlement on the parenting time where he ended up going from 20 percent or 15 percent to 45 percent of the time he spent with his youngest child, I guess it would be at that point in time. So, I mean, he got something out of that negotiation. Okay, you know what? I'll keep paying the same amount of support, but I'm getting a bunch more time with my son. So that's the give and take of that negotiation. But the cases that you're referring to that deal with a change in parenting time all existed at that time. There are none that I'm aware of that have been decided since 2017 with the enactment of this new statute. So he could have done that back then. Him waiting 40 years to do it now under the new statute is exactly what the Court cautioned child courts to avoid, and I think that's exactly what he's trying to do. There's no dispute that the time change was an agreement. What he's reliant on almost five years later is too remote for this Court to now come in and say, Oh, you know, Mr. Izzo, let's go back in time. How does the Court determine what's too remote? I mean, are we talking about one year, two years? What guidelines are there? There are none. None that I could find. That is true. So we look at what would be the standard of review that we would look at the trial court's decision with respect to that factor. That's the standard of proof. That no reasonable person would have come to the same conclusion. Right. He was able to listen to the testimony, gauge the credibility of the witnesses, gauge their demeanor and understand. And he determined, Judge Douglas determined, that what he was trying to do was improper, exactly what this Court itself and the Court pointed out that he should be aware of and avoid doing with this new statute. So if this child was a newborn and then he waited this four years or whatever, five years, and the judge said, Oh, no, you waited too long. So then theoretically he could not change his child support until the child reaches majority. He just waited too long. I think relying on that fact alone is not really the only issue I think you have. That's pretty harsh. It's very difficult. To not be able to establish a change in circumstances forever, basically. I don't think it is that hard for Mr. Mazzoli to do. Well, no, I understand. Everybody here is very well for it. I'm just talking about the law. You know, we write cases for the parties, but we also write cases for other people to take into court with them and show judges. So, you know, what are we taking out of this case? I think what we're taking out of this case, in this particular instance, in this particular set of facts, allowing him to come in that door underneath, you know, under this new statute, based on the totality of all of these circumstances, the remoteness of the change from 2014 to the filing of his petition, the voluntarily quitting of his job, the contemplated circumstances, all of these things that he's alleged, and the courts rightly pointed out, don't add up. So you agree with this holistic view for substantial change in circumstances? No. No. Well, that's what you're arguing just now. You just said that, taking into consideration all these factors. The trial court was correct in saying there was no substantial change in circumstances. The trial court was correct in identifying each one of the issues individually. Another important part on this issue is that this holistic approach was never argued at the time of trial. It was never raised in a post-trial motion. It should be weighed, it should be deemed weighed, and it's here in this appeal. Are we precluded from looking at the case law and drawing our own determinations on appeal? No. But they didn't raise that. That's a general standard that's pretty well settled, that you can't raise an issue on appeal for the first time, and that's essentially what they're doing. I'm sorry. What are they doing? In their brief on this appeal, they raised this holistic approach, this aggregate of circumstances. Right, taking everything into account. Right. Okay. But if you look at the Verheiden's decision, and Justice Burke can point that out, that deals with each issue individually, the financial circumstances. You look at all of them. You don't just look at his W-2, it went from X down to Y. You've got to look at, well, how much money does he have saved for retirement? How much money is he drawing from that retirement? How much money is he earning in passive income as opposed to his actual W-2 wages? That's the whole thing. You look at all of those circumstances. You don't get to cross-pollinate between each one of these issues, the contemplated circumstances. Because there's a whole lineage of cases over the years that define that, that have delved into that and made decisions on each one of those issues individually. You can't approach it that way. In the Verheiden's case, at paragraph 89, the Court says, drawing from the aforementioned cases, and they had discussed them, the factors to consider in determining whether a parent who has retired has suffered a substantial change in circumstances or instead should be expected to reach into retirement assets in order to fulfill its existing support obligation include, and then they list the seven different factors. Opposing counsel mentioned a few of them. So Verheiden's, I think, tells us that a court has to look at all of these circumstances, not just separately, but take them all into account when the decision with respect to whether there's a substantial change in circumstances is being made. I would disagree. You interpret this language differently. I interpret that language to be very specific to the retirement issue alone. Of those seven factors, it doesn't talk about a parent in retirement. Well, but we have a man who's retired here. Well, we have a man who voluntarily chose to quit his job for no reason earning over a million dollars a year. He voluntarily chose to retire. Judge Douglas didn't buy that. Judge Douglas found that that was a voluntary act on his behalf to get out from under his support obligation, which he's been trying to do almost since the entry of the judgment in 2008. He used this as his last-ditch attempt to do this. That's what Judge Douglas found. The Verheiden's decision also, when you're talking about. . . So you're saying you take a holistic view of that one issue. That's what Verheiden said. In the conclusion of Verheiden, this Court points that out very succinctly and specifically when it says, as we have stated, well-funded retirement accounts are meant to finance one's life, and existing obligations are part of one's life. That would be the child support that Mr. Wiggins is required to pay, and which he testified he has the ability to pay. The Court went on to state that traditional earned income is expected to be lower in retirement, but this should not result in the presumption that there has been a substantial change in economic fortune, resulting in a decreased ability to pay child support. Just as income decreases, a countervailing shift in financial goals occurs. The focus shifts from work, traditional income, and savings to passive income. May I finish? Of course. Passive growth and measured withdrawals. The petitioner must prove, based on his unique circumstances, that his financial position in retirement renders him less able to pay the full support amount. You were reading from where? That's from the conclusion. What's the page site? The page site would be paragraph 117. It's in the conclusion of the opinion, the last full paragraph of the opinion. Thank you. So what that does is it wraps up that financial issue, and that's a good word, and bear on it. I just have one other quick question. Getting back to this five-year delay on the issue of the change in parenting time, didn't we specifically rule against that proposition of law in Sorokin? See, I think Sorokin is distinguishing in the facts in this case. In Sorokin, the modification that was sought was still under the old child support statute. It would have been 28 percent, 32 percent, depending on the number, because the old guideline, percent of support. So in that case, when he sought the change, it wouldn't have been under this new statute, and that's very distinguishable from this case. And this Court pointed that out in the settlement case. You can't allow anything that happened prior to that in the statute to constitute a substantial change. Otherwise, everybody will be flooding in, trying to get out in front of us. And the Court is aware of that. The Court pointed it out. So wait a minute. You're arguing that since the new statute came in, if somebody actually has a substantial change in circumstance, as long as the new statute would then give them a lesser obligation, they can't bring it? No. If the change happens after the enactment of the statute. That's what I'm saying, though. I mean, there's a lot of people out there who have narrow settlement agreements, then the new law came into effect, and then they're going to have some substantial change in circumstance, maybe a serious health problem, maybe they actually are forced to leave their job, whatever the case may be. If under the new law their obligation would be lesser, are you saying that they cannot file a petition? No. No, no. I'm saying that that's not what I'm saying. If there's a change in circumstance, health issue, that comes any time after 2017, that's clearly going to, if it is a substantial change, it would need to be considered by the court, and if that's played out, it would possibly warrant a change. But here, this change in 2014 is too remote to allow him to come in. So if somebody could prove that the health issue actually came about one day before the statute took effect, they're out of the box. I don't think that would be because they're too remote. But five years? Well, you're saying you can't rely on the statute. I mean, now we're talking about gradation of time. Your argument was very specific, and that is you can't rely on this. If you're going to have a better result under this new statute, you can't rely on that for substantial change. That's something that happened before the statute took effect. No, I don't think I'm saying that. I'm saying specifically in this particular instance, these facts, the multiple times in the past that he's tried to modify support, Judge Douglas' analysis of that and consideration of that, and Mr. Izzo's credibility and demeanor on the stand all support Judge Douglas' decision that in this particular case his reliance on that factor to try to basically terminate his child support obligation when there has been no change financially for him that prevented him from paying, all of the other things that he alleges are contemplated by the court. You're saying it's based on the facts of this case. I understand. I was talking more about the run, General. I don't know. Right. But then you're saying we ignore that the court should ignore the change in parenting time, that that's not significant. I don't think that that happening in 2014 constitutes a substantial change in circumstances, warranting a modification of the income shares statute. There may not be a modification. You're jumping the gun past the second stage. You're saying if he has a substantial change in circumstances, automatically he's going to get relief. The trial judge then, listening to, again, all the evidence and making credibility determinations, could very easily say, you're still paying the same amount, buddy. Right? He couldn't. And that was an argument that was made at the trial level on behalf of Ms. Sisson. The court could have imputed income to him, could have maintained his, but Judge Douglas, he was given two options, address it as not a change in circumstances, warranting modification, or even if you do, you have the ability to modify or to impute income to him, and that's been my brief to this court as well. Thank you very much, counsel. All right. Ms. Dean. Counsel, how do you respond to the Salvatore case in the paragraph 117 that counsel read to the court? How should we view that case? Paragraph 117.  Let me look at paragraph 117. Okay. You said it was the conclusion. I don't have it in front of me, but I heard what he read. Well, I would say a couple things. One, if I'm understanding counsel's argument correctly, he's saying that the statute, you are not allowed to bring any type of action where the substantial change happened before the change in the statute. If that were the case, it would be in the statute. He is reading in requirements to a substantial change which don't exist, which we all know under statutory disruption is not allowed. Which would also probably be against the public policy if, in fact, somebody is seeking an increase in charges. Absolutely. Based on a substantial change. Right. So that's the first thing. Secondly, I don't believe that this was some sort of scheme in which he laid in the weeds and waited for a change in statute. The record doesn't support what counsel is saying in terms of the number of times that he came back to seek modification. There was one attempt close to the judgment, which the judgment was 2008. Then we have all the way into 2018. That is quite a scheme, right, to sit around and wait for 11 years. It's not as if he makes it sound as if it's a last-ditch attempt to try to finally get his support changed. When in reality, even in 2013, when his time changed, rather than rock the boat, make anyone upset, he continued to pay the same amount because he could. He continued to be generous and give that money. But then when he was forced out of his position, enough is enough. The time was then for him to make the change. I don't believe that Salvatore has any application to this case. Counsel's argument about Verhines, though, is that this court, in that case, took a holistic view of one allegation of substantial change. You've got three separate allegations of substantial change. You're asking us to take a holistic view of all three together, whereas Verhines really just looked at the retirement and then took a holistic view of that one aspect. From what I can tell of the decision of Verhines, there was only one basis for substantial change, and that was retirement. So if the movement in Verhines had several factors in the way that Mr. Izzo did, then I think perhaps the decision may read differently. This is not something that is argued for the first time on appeal. He argued all of these facts as substantial changes in his petition, and they weren't separate counts. It was all part of one claim. So the fact that he's arguing that I don't think that it should be all considered, that's not new. That's always been there. And just because the trial court chose to look at each one separately, that is not Mr. Izzo. One thing I do want to mention is the whole argument about bad faith. The court decided that he had retired in bad faith because there was no evidence that he did not leave his position to avoid paying support, and he didn't ask for an accommodation of his visitation so that he could travel four to five days to Virginia, and that he failed to seek new employment. So it seems to be, it would be a manifest, it would be an error if, against the manifest weight of the evidence, to find there's bad faith for a person who never shied away from any expense for his children. As I mentioned before, the college expenses he paid without contribution, most of the extracurricular activities, the medical expenses, he did not seek any sort of reimbursement. And again, he didn't come back to try to get his support reduced when his time increased so substantially. And he has two adult kids that have been living with him, and he has been supporting this whole time. But again, even if it was in bad faith, it's only one factor of many under five or higher. But he didn't look for local employment because he had enough resources to continue to support his family in the fashion in which he was doing it already. Yes. So why would that be a substantial change in circumstances if you have the ability to continue to support your family in the same manner? He never claimed that it was not, that it was an issue of ability. It was an issue of what's fair when you have two people of equal wealth, substantial wealth, with equal time. Why should one person be paying the other person support? When in their own MSA, when you look at how the child support was determined, we have three children, one that lived with him primarily, one at the time of the marital settlement agreement was biding his time between the two households, and then the youngest, who at the time of the judgment, was living primarily with her. So the child support award was only for the child that was living primarily with her, even though they're all minor children. And that's because for the middle one, it was equal time. There was no reason for them to be paying each other support. The obligations were the same for both of them. It's the same concept here. Now they each have the same abilities, same obligations, et cetera. Thank you, counsel. Thank you both for your arguments this morning. The court will take the matter under advisement, and we will render a decision in due course. We stand in recess until the next case. Thank you.